**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Allen COADES, Defendant-Appellant.**

**No. 76–2326.**

United States Court of Appeals,
Ninth Circuit.

Feb. 3, 1977.

William H. Fortune, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING and CHOY, Circuit Judges, and THOMPSON,* District Judge.

PER CURIAM:

Appellant challenges his conviction of attempted bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a)(d). We affirm.

1. Appellant argues that evidence obtained incident to his arrest should have been suppressed because the police officers lacked probable cause to arrest him. Customers and employees of the bank saw two black men with stocking masks step out of a car and approach the rear door of the bank, carrying guns. One man entered the bank. . He exchanged gunfire with the security guard. The men ran. The guard gave chase. The guard encountered four

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

off-duty officers in the bank parking lot. He told the officers what had happened, described the robbers as two male Negroes, one wearing a leather jacket, and indicated the direction of their flight. The officers drove off in pursuit. At the next intersection a by-stander pointed down the intersecting street. The officers turned the corner, and saw two black males, one wearing a leather jacket, walking down the street, approximately one-half block from the intersection. They were the only pedestrians in sight. The officers pulled to a stop behind the men, jumped out with drawn guns, and shouted, "Freeze," "Police," "Hit the ground." After a second warning, appellant obeyed. Between the first and second warnings appellant dropped a mask and surgical gloves on the sidewalk. A recently fired gun was found beneath him as he lay on the pavement.

Appellant argues that the arrest occurred when he and his companion were ordered to stop and prostrate themselves, and at that moment the officers lacked probable cause to believe the two men had committed an offense.

The facts known to the officers when appellant was ordered to halt, briefly outlined above, constituted probable cause.

In any event, when the order to halt was given the officers had sufficient information to justify stopping appellant and his companion for further inquiry; and, as appellant concedes, observation of the gloves and mask in plain view immediately thereafter provided probable cause for the subsequent arrest. The show of force employed to effectuate the stop was reasonable in light of the officers' information that the two men were armed and in flight from an attempted bank robbery in which a gun fight had ensued. *See United States v. Richards,* 500 F.2d 1025, 1028–29 (9th Cir. 1974). The decision in *United States v. Strickler,* 490 F.2d 378 (9th Cir. 1974), is distinguishable for nothing in the circumstances known to the officers in that case when they stopped the suspects at gunpoint suggested that such a show of force was necessary to detain the individuals for questioning with reasonable safety for the officers.

■ 2. Appellant contends that testimony of an FBI agent that appellant confessed to the crime charged should have been suppressed because the interrogation was not recorded electronically or stenographically. Appellant recognizes the lack of authority for his position but urges that we adopt it to insure reliability of police reports of oral confessions during custodial interrogation. Our recent opinion in *United States v. Harris,* 543 F.2d 1247 (9th Cir. 1976), does respond to some of appellant's concerns. The need for the rule suggested by appellant and the particular form such a rule should take are appropriate matters for consideration by Congress, not for a court exercising an appellate function.

■ 3. Appellant argues that the lower court erred in admitting the testimony of witnesses based on a "show-up" in the bank after the attempted robbery. Obviously, a "show-up" is more suggestive than a lineup because the suspect is the only person presented for identification. On the other hand, returning a suspect to the scene of a crime shortly after its commission to determine whether eye-witnesses identify him as the perpetrator permits the witnesses to make the determination while the image of the perpetrator is still fresh in their minds (*Russell v. United States,* 408 F.2d 1280, 1284 (1969)), and may lead to the expeditious release of innocent suspects. *United States v. Gaines,* 450 F.2d 186, 197 (3d Cir. 1971); *Russell v. United States, supra,* 408 F.2d at 1284.

The test to be applied in determining whether due process is denied by introduction of proof of the results of a pretrial "show-up" is the same as that applied to other identification procedures, namely, whether in the "totality of circumstances" the process was so suggestive as to create a very substantial likelihood of misidentification. *Neil v. Biggers,* 409 U.S. 188, 196–201, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Although the opportunity of the witnesses to observe appellant during the robbery was brief, the "show-up" occurred only minutes

later and the witnesses were able to identify appellant by distinctive characteristics of his clothing and general appearance. We are satisfied that in all the circumstances the possibility of misidentification was minimal.

4. Appellant argues that the lower court erred in admitting into evidence a microscopic piece of glass found in his leather jacket, since the chain of custody of the jacket was not sufficiently established to insure that the glass was not inadvertently introduced by someone handling the jacket subsequent to the crime. There is a presumption of regularity in the handling of exhibits by public officials. A mere showing that an opportunity existed for unlawful tampering with the evidence is insufficient to justify exclusion; affirmative evidence of bad faith or actual tampering is required. *United States v. Daughtry,* 502 F.2d 1019, 1021 (5th Cir. 1974).

5. Finally, appellant argues that the trial court erred in permitting the government to introduce evidence of his prior conviction for bank robbery. We agree. Proof of the prior conviction served no legitimate end. The government's contention that the evidence was relevant to establish the existence of an intent to rob is frivolous. The only contested factual issue was whether appellant was the person who entered the bank; appellant offered to stipulate that whoever entered the bank intended to rob it. It was uncontroverted that the person who entered the bank was wearing a mask and gloves and carried a gun which he fired at the guard before fleeing. Whatever slight probative value evidence of the conviction may have had was patently outweighed by the danger of unfair prejudice. *See* Federal Rule of Evidence 403. The misuse of evidence of prior misconduct in this case is a deplorable example of prosecutorial overzealousness. Such incidents have occurred with sufficient frequency in recent trials to be a source of growing concern. Whatever the proper remedy may be, however, it would be inappropriate to reverse appellant's conviction on this ground. Proof of appellant's guilt was so overwhelming that the error could not have affected the outcome.

Affirmed.