**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

   v.

GENARO SMITH-BALTIHER,
   *Defendant-Appellant.*

No. 03-50375

D.C. No.
CR-02-01867-BTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
December 8, 2004—Pasadena, California

Filed September 9, 2005

Before: Stephen Reinhardt, Robert R. Beezer, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

12871

**COUNSEL**

Matthew C. Winter, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Carol C. Lam, United States Attorney; Roger W. Haines, Jr., Christopher M. Alexander, Assistant U.S. Attorneys, San Diego, California, for the plaintiff-appellee.

**OPINION**

REINHARDT, Circuit Judge:

The issues presented include how courts should determine in a criminal proceeding whether a defendant is a citizen or an alien and whether a good faith belief that one is a citizen is enough to defeat a charge of attempted illegal entry. Genaro Smith-Baltiher was convicted of attempted reentry into the United States in violation of 8 U.S.C. § 1326. He appeals the district court's rulings that (1) he is collaterally estopped from challenging his status as an alien, (2) he is precluded from presenting evidence of his good faith reasonable belief that he did not need permission to reenter, and (3) his voluntary post-arrest statements to border inspectors are admissible although they were not electronically recorded. Additionally, he chal-

lenges the district court's discretionary denial of a continuance on the morning of trial and the constitutionality of his sentence. Because we agree that he is not collaterally estopped from challenging his status as an alien and that he is entitled to present evidence of his reasonable belief that he did not need permission to reenter, we reverse the pertinent rulings of the district court and his conviction; we remand the case for a new trial or such other action as may be appropriate. It is therefore not necessary for us to decide the continuance and sentencing issues. We affirm the district court's admission of the post-arrest statements, however, as the identical question is likely to arise again following remand.

## I.

Smith applied for entry at the San Ysidro, California Port of Entry. He informed an Immigration and Naturalization Service ("INS")[1] inspector that he was a U.S. citizen by birth, but that he did not possess supporting identification. He was then referred to another inspector for a secondary interview. Computer checks of Smith's name and fingerprints revealed that on at least four prior occasions, he had been deported and removed to Mexico for being an illegal alien found in the U.S.[2] Consequently, the inspector placed him under arrest for attempting reentry without consent in violation of 8 U.S.C. § 1326.

Smith waived his *Miranda* rights and the inspector transcribed handwritten notes of the interview. Smith stated that he was born in Tijuana, Mexico and provided the inspector with a Mexican birth certificate that confirmed his Mexican birthplace and that stated that both of his parents were Mexi-

---

[1]The INS is now called the Bureau of Citizenship and Immigration Services. For the sake of consistency, we will refer to it as the INS throughout this opinion.

[2]The computer reports of Smith's prior deportations and removals were not presented to the jury.

can nationals. He also said that he had told the first inspector that he was born in California, but he then acknowledged that he had been deported on at least four prior occasions and that he had not obtained permission or a waiver to reenter.

A grand jury later charged him under § 1326 with being an alien who, having previously been excluded, deported, and removed from the U.S., attempted to reenter without the Attorney General's express consent to his reapplication for admission. Although Smith has never filed an application for a certificate of citizenship with the INS, numerous pre-trial motions hearings and status conferences were held in this case regarding discovery of his evolving citizenship claim.

Prior to trial, defense counsel requested that the government turn over a copy of the U.S. birth certificate of the defendant's mother, Maria Baltiher, so that counsel could investigate a claim of derivative citizenship. The government denied having a valid birth certificate for the mother because the one it possessed was, in the government's words, "fraudulently obtained . . . . It was obtained by means of an affidavit, and it was a belatedly issued birth certificate." No court, however, has ever determined the birth certificate to be fraudulent. Accordingly, the district court ordered the government to turn over the certificate and any application or affidavit supporting it, on the ground that the certificate appeared exculpatory on its face.

The district court also ordered an *in camera* inspection of the mother's A-File.[3] After reviewing the file, the court determined that the information within the file was discoverable and that defense counsel should be allowed to inspect and copy it. At that time, the government inquired whether the

---

[3]"An INS A-File identifies an individual by name, aliases, date of birth, and citizenship, and all records and documents related to the alien are maintained in that file." *United States v. Blanco-Gallegos*, 188 F.3d 1072, 1075 n.2 (9th Cir. 1999) (quotations omitted).

court would be "looking to make a determination on derivative citizenship before the trial date." The judge replied that he did not intend to make a determination before trial: "I think that would be a fact question for the jury."

Smith filed a motion to preclude the use of his prior guilty pleas. Although Smith has a sordid criminal history, its only relevance in this appeal is that in 1998 and 1999 he was convicted of charges related to illegal entry. He pled guilty in 1998 to being a deported alien found in the U.S. and in 1999 to illegal entry in violation of 8 U.S.C. § 1325. On both occasions, he stipulated as part of his guilty plea that he was not a U.S. citizen and in neither did he advance a claim of U.S. citizenship. In fact, the question of his derivative citizenship had never been raised or litigated before any court prior to the institution of these proceedings; thus there had been no previous discovery regarding his mother's birth certificate or any of the reports, letters, or affidavits purporting to establish her U.S. birth.

At the hearing on the *Brady* motion, the government moved to preclude all evidence of Smith's alleged U.S. citizenship. Defense counsel objected because "that [was] Mr. Smith's defense in the case." After inquiring into the requirements for derivative citizenship, the court denied the government's motion, ruling that Smith is "free to put on evidence that he meets the derivative citizenship standard, and [the court] would instruct the jury on what the test for derivative citizenship is . . . . [The government has] to prove beyond a reasonable doubt that he is an alien."

At a hearing about a month later, the court considered a motion to suppress the post-arrest statements on the ground that the interrogation was not electronically recorded despite the availability of functioning video equipment in the interview room. The court denied the motion, ruling that the statement was voluntary and that neither the Constitution nor any

other controlling authority compels the electronic recording of statements.

At the next hearing, the court heard the remaining pre-trial motions. The court first addressed the issue of the requisite element of intent under § 1326. It expressed uncertainty as to whether the offense required general or specific intent. The court then informed the parties that it would instruct the jury that one of the elements of the offense is that the defendant is not a U.S. citizen or national and that it would also instruct it as to the requirements for derivative citizenship. The government objected to these instructions on the ground that Smith is entitled to derivative citizenship if, and only if, he has received a certificate to that effect. In other words, the government argued that derivative citizenship is not automatically acquired at birth but must be applied for, and that it is obtained only by virtue of official recognition in the form of a certificate. The hearing concluded with the court's instruction to both parties to "brief whether one is a derivative citizen if they meet the requirements as a matter of fact or only when a certificate of derivative citizenship is issued by the I.N.S."[4]

At a hearing the week before trial, the court considered the government's argument that Smith was collaterally estopped from challenging his status as an alien because he had admitted in prior guilty pleas that he was not a U.S. citizen. The court decided the issue in the government's favor, ruling that the prior judgments based on pleas of guilty collaterally estopped Smith from contesting the issue of alienage in this or any subsequent criminal proceeding. Although defense

---

[4]The judge also ruled that he would not permit testimony regarding Smith's purpose in attempting to enter the United States. Smith had informed the inspector that his destination was San Diego where he planned to reside with his wife and obtain the medication he needed. He had been diagnosed with schizophrenia in 1984 and still suffers from borderline intellectual functioning, auditory hallucinations, anti-social traits, and a seizure disorder.

counsel attempted to show that Smith intended to offer evidence that would support a claim of derivative citizenship and that the pleas had not been taken under the stringent reasonable doubt standard, the court nevertheless ruled that he was collaterally estopped from contesting the alienage issue. The court, quoting *United States v. Bejar-Matrecios*, 618 F.2d 81, 84 (9th Cir. 1980), explained: "Because a knowing and voluntary guilty plea constitutes an admission of all of the material facts alleged in the indictment, it is fair to estop a defendant from re-litigating a common material fact even at a subsequent criminal proceeding." The ruling was consistent with the view of offensive collateral estoppel then controlling in this circuit.

On the eve of trial, the district court heard argument by defense counsel that because attempted reentry is a specific intent crime, a mental health expert should be allowed to testify at trial. Counsel stated that through the expert's testimony as well as testimony from Smith's family, he intended to establish that at the time Smith applied for admission, he believed in good faith that he was a U.S. citizen. He argued that because U.S. citizens do not need permission to enter the country, Smith had no obligation to seek the Attorney General's consent. The court initially agreed with defense counsel, ruling, "It seems to me that if he doesn't think he needs the express consent of the Attorney General, he can't be found guilty of that . . . . I think they can raise this."

At the same hearing, the district court ruled both that Smith's pre-arrest statements to the INS inspectors were admissible and that the government would be permitted to introduce the testimony concerning his prior guilty pleas. Defense counsel objected, arguing that at the time of the pleas Smith did not have access to the mother's A-File, which provides critical evidence supporting his citizenship claim.

The next day, just before the trial commenced, the district court reversed its prior ruling concerning the validity of

Smith's specific intent defense, stating that evidence of his good faith reasonable belief that he was a citizen was not admissible because the offense requires only that he intend to enter without the Attorney General's permission, irrespective of his reason for not obtaining that consent. The court ruled that Smith's defense was based on a mistake of law and as such was not legally cognizable. The court's ruling had the effect of suppressing all evidence as to Smith's good faith belief that he was a citizen and that he, therefore, did not need official permission to enter.

Defense counsel twice requested a recess in light of the court's drastic shift in opinion, which occurred only days after it had ruled that Smith was collaterally estopped from raising the derivative citizenship issue as a result of his prior guilty pleas. The court denied the continuance on the ground that counsel still had sufficient time to prepare. After a short recess, counsel renewed his request for a one-week continuance, but the court again denied the request on the grounds that the defense would not be prejudiced by the denial and that the underlying issue was one the court of appeals should resolve.[5]

Following the court's pretrial rulings, Smith was left without a substantial defense. The district court ruled that Smith was collaterally estopped from litigating the issue of alienage and that any reasonable belief on his part as to his derivative citizenship was irrelevant. At trial, over defense objections, the court permitted the government to introduce, via Smith's prior guilty pleas, his testimony that he was not a U.S. citizen and that he would not unlawfully return to the U.S. The court

_____

[5]Expressing his discontent with the current state of the law regarding what constituted citizenship, the district judge stated, "[t]he Ninth Circuit should decide [this issue], because lately . . . there seems [to] be a lot of citizenship cases as a defense to 1326. And it certainly would be helpful if we got [a] definitive ruling. And if I am wrong, I certainly want to be corrected. So I encourage the issues to be decide[d] by the Ninth Circuit."

permitted the government to use those pleas against him offensively, and barred him from offering any contrary evidence. As a result, Smith was precluded from challenging two elements of the offense and from presenting any evidence in support of two defenses — a derivative citizenship defense, namely, that he had derived U.S. citizenship through his American mother, and a reasonable belief defense, namely, that he reasonably believed that he was a derivative citizen and did not need the Attorney General's permission to enter the U.S. Smith had little else to offer by way of defense.

Consistent with its earlier rulings, the district court denied a request by defense counsel for a derivative citizenship jury instruction, stating "there's no doubt about it. I think that if I'm wrong on that issue, we should have the pleasure of each other's company doing this again . . . He's certainly been denied that defense in this proceeding." After a three-day trial, the jury returned a verdict of guilty. The district court sentenced the defendant to sixty-six months in custody and three years of supervised release.

On appeal, Smith asks us to decide (1) whether he was denied due process when the district court allowed the government to use collateral estoppel offensively to prevent Smith from contesting one or more elements of the offense, (2) whether the district court erred in denying his defense that he lacked the *mens rea* necessary to a conviction, because he had a reasonable belief that he was a U.S. citizen, and (3) whether his post-arrest statements should have been suppressed because they were not electronically recorded.[6] We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

---

[6]Smith also raised two additional issues: (1) that the district court abused its discretion in refusing to continue his trial and (2) that his sentence is counter to *Blakely v. Washington*, 542 U.S. 296 (2004). Because we remand for a new trial, we do not need to reach the continuance or sentencing issues.

**II.**

*A.   Collateral Estoppel*

Smith argues that the district court improperly allowed the government to use collateral estoppel to prevent him from challenging two elements of the offense — namely, his status as an alien and his *mens rea*. We review the application of the collateral estoppel doctrine *de novo*. *See McQuillion v. Schwarzennegger*, 369 F.3d 1091, 1096 (9th Cir. 2004).

**[1]** The collateral estoppel doctrine cautions litigants that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). A collateral estoppel determination encompasses three formal steps:

> (1) we identify the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) we examine the record of the prior case to decide whether the issue was 'litigated' in the first case; and (3) we examine the record in the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*United States v. Romeo*, 114 F.3d 141, 143 (9th Cir. 1997) (emphasis omitted). Despite the formal nature of this determination, collateral estoppel is not applied in criminal cases "with the hypertechnical and archaic approach of a 19th century pleading book," but rather with "realism and rationality." *Ashe*, 397 U.S. at 444; *see also id.* at 464 (Burger, C.J., dissenting) ("[I]n criminal cases, finality and conservation of private, public and judicial resources are lesser values than in civil litigation.").

**[2]** At the time of the district court decision, we had held that collateral estoppel could be used offensively against a criminal defendant in the context of illegal reentry prosecutions. *See Bejar-Matrecios*, 618 F.2d at 83; *Pena-Cabanillas v. United States*, 394 F.2d 785, 787-88 (9th Cir. 1968) (adopting the reasoning of *United States v. Rangel-Perez*, 179 F. Supp. 619, 625 (S.D. Cal. 1959)). Given our precedent at the time of the district court's decision, the court understandably ruled that Smith was collaterally estopped from contesting his status as an alien on the ground that he had admitted to that status in two of his prior guilty pleas.

A number of other circuits disagreed with our rule; they held that collateral estoppel could not be used in a criminal case to prevent a defendant from contesting an element of the offense. *See, e.g.*, *United States v. Gallardo-Mendez*, 150 F.3d 1240, 1244 (10th Cir. 1998) ("[W]hile 'wise public policy and judicial efficiency' may be sufficient reasons to apply collateral estoppel in civil cases, they do not have the same weight and value in criminal cases."); *United States v. Pelullo*, 14 F.3d 881, 889-97 (3d Cir. 1994) (holding that defendant's prior conviction following a jury trial for wire fraud did not prevent re-litigation of the same crime as a predicate offense in his later RICO trial); *United States v. Harnage*, 976 F.2d 633, 634-36 (11th Cir. 1992) (rejecting the use of collateral estoppel against criminal defendants on the ground of judicial economy).

**[3]** The government disagreed with our case law as well. In a written submission to the en banc court, the government abandoned its defense of the use of offensive collateral estoppel against criminal defendants, informing us that "[i]n federal criminal trials, the United States may not use collateral estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the Government bears the burden of proof beyond a reasonable doubt." *United States v. Arnett*, 353 F.3d 765, 766

(9th Cir. 2003) (en banc) (per curiam order). We accepted the government's "confession of error." *Id.*

**[4]** In the present case, the government likewise concedes that the use of offensive collateral estoppel is not proper. Thus, collateral estoppel does not provide a basis for precluding Smith from contesting his alienage or offering evidence of his derivative citizenship, or from asserting that he did not possess the *mens rea* necessary to support a conviction.

## B.   Exclusion of Evidence Challenging Alienage

In light of its reversal of fortune with respect to its collateral estoppel objection, the government now argues instead that for a number of other reasons the exclusion of Smith's defense that he was a derivative citizen does not justify reversal of his conviction. First, it argues that a person born abroad may not be afforded any rights as a citizen unless and until he obtains a certificate of citizenship. Because Smith does not possess such a certificate, the government contends that the district court properly excluded the evidence related to his derivative citizenship status.

**[5]** The government's argument is incorrect. Smith was entitled to U.S. citizenship, along with its rights and privileges, from the moment of birth, not upon the issuance of a certificate of citizenship or any other formal determination by the INS or any other government official. *See* 8 U.S.C. § 1401(g) (stating that derivative citizens are "nationals and citizens of the U.S. *at birth*" (emphasis added)); *Miller v. Albright*, 523 U.S. 420, 429-30 (1998) (plurality opinion) (holding that 8 U.S.C. § 1401(g) provides for citizenship at birth); *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1092-94 (9th Cir. 2005) (same). In short, if Smith is entitled to U.S. citizenship as derived through his mother, his right to be treated as a citizen is not dependent upon the award of a certificate. He was a citizen from the moment of his birth. *See* 8 U.S.C. § 1401(g).

The government next argues that whether a person born abroad derives U.S. citizenship from a parent is a question to be decided exclusively by the Attorney General, or his designated successor, the Secretary of the Department of Homeland Security, and may not be reviewed by a court, or, even more so, by a jury. The government's contention that only the INS may decide the question of Smith's derivative citizenship is simply incorrect. Regardless of how a citizen wrongly denied his lawful status may vindicate his rights in other circumstances, the question of derivative citizenship arises here in the course of a criminal proceeding and is, under our legal system, one to be decided by a jury.

Smith is being prosecuted for violating 8 U.S.C. § 1326. Under the charged offense, a previously deported *alien* who "enters, attempts to enter, or is at any time found in" the United States without the express consent of the Attorney General is subject to a fine and imprisonment for up to two years. *See* 8 U.S.C. § 1326. As in all other criminal trials, the government must prove its case beyond a reasonable doubt. Sitting en banc, we held in *United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000) (en banc), that the defendant's alienage is an essential element of the § 1326 offense and that the government must carry its burden with respect to that element just as it does with all others. *See id.* at 1196-97 ("An appropriate instruction would have required the jury to find beyond a reasonable doubt that [the defendant] satisfied each of the five elements [including alienage].").[7]

---

[7]"[T]he elements of the crime of attempted illegal reentry into the United States under 8 U.S.C. § 1326 are: (1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) the defendant committed an overt act that was a substantial step towards reentering without that consent; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry." *Gracidas-Ulibarry*, 231 F.3d at 1196 (citations omitted).

Because alienage is an element of the offense, Smith is entitled to have the jury determine that question at trial. *See Apprendi v. New Jersey*, 530 U.S. 466, 476-77 (2000) (stating that the Sixth and Fourteenth Amendments, taken together, entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt" (quotations omitted) (alternations in original)); *United States v. Marin-Cuevas*, 147 F.3d 889, 892 (9th Cir. 1998) (holding that due process and the Sixth Amendment require that the jury have an opportunity to consider evidence of defendant's derivative citizenship); *United States v. Meza-Soria*, 935 F.2d 166, 170 (9th Cir. 1991) (defendant is "entitled to put the government to its proof on the issue of alienage"). Because derivative citizenship would negate that element of the offense, Smith must be allowed to present that defense to the jury. It is only after the jurors consider Smith's evidence of derivative citizenship that they will be able to decide whether the government had successfully met its burden. *See United States v. Gaudin*, 515 U.S. 506, 509-10 (1995) (holding that the Due Process Clause and Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime . . . beyond a reasonable doubt.").

The government's fear that juries will dole out United States passports to sympathetic defendants is without basis. Had Smith been permitted to present evidence of his U.S. citizenship that the jury found credible, the determination in his favor would not have had the effect of awarding him citizenship. The jury's finding would have determined only that the government had not proven beyond a reasonable doubt that Smith was an alien.

**[6]** Finally, the government contends that even if the district court erred when it excluded Smith's evidence challenging alienage, any such error was harmless. This argument is also without merit. We have previously held that barring a defendant from presenting all evidence in support of a cogni-

zable defense, or from challenging an element of the crime, is structural error. *See United States v. Miguel*, 338 F.3d 995, 1003 (9th Cir. 2003) (precluding counsel from arguing the defense theory of the case constitutes structural error); *see also Conde v. Henry*, 198 F.3d 734, 741 (9th Cir. 2000) (as amended) ("[W]e do not apply harmless error review in cases that contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (quotations omitted)). Having notified the court of his intent to introduce evidence challenging an element of the crime, the defendant was entitled to present probative evidence to that effect. Denial of the opportunity to present his defense was, without more, sufficient to warrant reversal. As the district judge correctly observed regarding the effect of his order precluding Smith from contesting the element of alienage, "[T]here's no doubt about it. I think that if I'm wrong on that issue, we should have the pleasure of each other's company doing this again . . . [Smith's] certainly been denied that defense in this proceeding."[8]

---

[8]We note that the availability of a harmless error standard in this case would be of no benefit to the government. 8 U.S.C. § 1401(g) provides that Smith is entitled to derivative citizenship if prior to his birth his mother was both a United States citizen and physically present in the U.S. for a period of not less than five years, at least two of which were after attaining the age of fourteen. Smith alleges that his mother was born and baptized in New Mexico, and lived there and in other parts of the U.S. throughout her life. He had documentary evidence to support these contentions, including her New Mexico birth certificate, her baptismal records from a New Mexico church, INS Reports which stated that the investigation into the status of his mother revealed that she was born in the U.S., and affidavits of people living in the U.S., all of which attest that the mother was born in this country. He also would have presented testimony of other family members to the effect that his mother is a U.S. citizen and that he was raised in San Diego with his family, attended school there, and worked in San Diego. These witnesses were in court and willing to testify on the morning of trial. Although we offer no opinion as to the credibility of Smith's evidence, that evidence, if deemed credible, would demonstrate that his mother was born in this country and was physically present here for a period of not less than five years, at least two of which were after

**[7]** Because the question of alienage is an issue that must be resolved by the jury, the district court erred when it collaterally estopped Smith from presenting a defense with respect to that element of the charged offense. The ruling served to relieve the government of its obligation to establish Smith's guilt beyond a reasonable doubt. Smith, therefore, is entitled to a reversal of his conviction and, if the government elects to re-try him, a new trial at which the government will be required to meet its burden of establishing his alienage beyond a reasonable doubt. *See Gaudin*, 515 U.S. at 510; *Arnett*, 353 F.3d at 766. At any such trial Smith may present evidence of derivative citizenship. Accordingly, we reverse Smith's conviction and remand the case for re-trial or such other disposition as may be appropriate. *See Arnett*, 353 F.3d at 766.

## C.   *Mens Rea Defense*

Because two other issues presented by the parties in this appeal will likely recur on remand, and because at least the first would provide an independent basis for reversal, we address them here as well.

**[8]** Smith contends that the district court erred in precluding him from offering the alternative defense that he reasonably believed he was a U.S. citizen when he attempted reentry and that he, therefore, did not need the consent of the Attorney General. As we have already explained, *Gracidas-Ulibarry*, an en banc decision of this court, established that an essential element of the § 1326 offense of attempted illegal reentry is that "the defendant had the purpose, i.e. conscious

---

she attained the age of fourteen. Although the government repeatedly characterizes the U.S. birth certificate of Smith's mother as "fraudulent" evidence, the validity of the birth certificate has never been litigated and there has never been a legal finding of fraud as to the documents purporting to establish the mother's citizenship.

desire, to reenter the United States without the express consent of the Attorney General." *Gracidas-Ulibarry*, 231 F.3d at 1196. We held in that case that attempted illegal reentry is a specific intent crime. *See id.* at 1193. If it were not, "any proactive attempt to follow the legally sanctioned procedure for seeking permission to reapply to reenter the United States would actually be [an] illegal 'attempt' to reenter." *Id.* at 1194 (quotations omitted). In other words, "the reason for requiring specific intent for attempt crimes is to resolve the uncertainty whether the defendant's purpose was to engage in criminal, rather than innocent, conduct." *Id.* at 1193.

Relying on *Gracidas-Ulibarry*, Smith argues that his defense to the specific intent element of the attempt offense is that at the time he applied for reentry, he reasonably believed that he was a U.S. citizen. He contends that his reasonable belief defense was based on a mistake of fact — namely, his mistaken understanding that he was a U.S. citizen. Consequently, he argues, he did not have the requisite specific intent to commit the charged offense.

The district court disagreed. It ruled that Smith was precluded from challenging the element of specific intent on the basis of his belief that he did not need permission to enter the U.S., and it refused to permit him to introduce evidence as to that belief. It did so on the ground of collateral estoppel, which we have disposed of *supra*, and also on the ground that Smith's belief that he did not need the Attorney General's permission to enter the U.S. constituted a mistake of law, rather than a mistake of fact. Whether a proffered defense relates to a mistake of law or a mistake of fact is relevant because typically only a mistake of fact provides a defense to a crime of specific intent such as attempted illegal reentry. *See id.* at 1196 ("The practical difference between these two levels of mental culpability is that certain defenses, such as voluntary intoxication and *subjective mistake of fact*, can negate culpability only for specific intent crimes." (emphasis added)). Interestingly, mistake of fact is not a defense to the

general intent crime of illegal reentry under § 1326. *United States v. Leon-Leon*, 35 F.3d 1428, 1432-33 (9th Cir. 1994).[9]

Although it is axiomatic that ignorance of the law is no defense, Smith's claim does not fall neatly into the traditional classification of either a mistake of law or a mistake of fact. His alleged mistake is not one of pure fact in the sense that he does not deny that the territory he sought to enter was a part of the United States or assert that he believed he had obtained the Attorney General's consent to enter. But neither is the mistake one of pure law, as he does not contend that he was ignorant or unaware of the need for aliens to obtain the Attorney General's permission. Rather, Smith's alleged mistake relates to the facts relevant to his mother's citizenship status and the legal effect of her status on his own right to citizenship. Such a defense, if proved, would negate the *mens rea* element of the § 1326 attempt charge.

The type of mistake alleged by Smith may best be characterized as a mixed mistake of fact and law; in any event, the circumstances here require a separate analysis from the traditional mistake of fact or ignorance of the law claim. While we have sometimes called the type of error Smith made a mistake of law and sometimes a mistake of fact, we have generally concluded that, however we formally classify such mistakes, they provide a defense to specific intent crimes involving alienage. In *United States v. Fierros*, 692 F.2d 1291 (9th Cir. 1982), we spoke of a mistake of law regarding alienage as being in effect a mistake of fact. We explained:

There are however, two categories of cases in which

---

[9]All the cases cited by the government to the effect that a defendant charged with violation of § 1326 may not raise his good faith belief that he was a citizen as a defense to the intent element of the charge involve defendants charged with illegally reentering the country, not with "attempt(ing)" to reenter. Unlike attempt, which is a specific intent crime, illegal reentry is a crime of general intent. *See US. v. Leon-Leon*, 35 F.3d at 1428.

a defense of ignorance of law is permitted even though it is not specifically written into the criminal statute. . . . *The first category involves instances where the defendant is ignorant of an independently determined legal status or condition that is one of the operative facts of the crime.* An example is *United States v. Petersen*, [513 F.2d 1133 (9th Cir. 1975)] . . . . In that case defendant was charged with embezzlement or theft of federal property in violation of 18 U.S.C. § 641, a crime requiring proof of specific intent. We held there that Petersen was entitled to an instruction on his defense that he reasonably believed that the person from whom he bought the property was legally authorized to sell it. *In such a case, the mistake of the law is for practical purposes a mistake of fact. See also United States v. Barker*, 546 F.2d 940, 946-54 (D.C. Cir. 1976); *United States v. Currier*, 621 F.2d 7, 9 n.1 (1st Cir. 1980) (citing *United States v. Freed*, 401 U.S. 601, 612 (1971) (Brennan, J., concurring)). *This type of defense would have been available to appellants in this case if, for example, they had asserted reasonable grounds to believe that the workers were not aliens or that they had been legally admitted to the United States.*

*Fierros*, 692 F.2d at 1294 (emphasis added). In *United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989), *superseded on other grounds*, *United States v. Gonzalez-Torres*, 309 F.3d 594 (9th Cir. 2003), we also categorized a mistake as to alienage as a mistake of fact, concluding that such a mistake negates the specific intent required for culpability. We stated that the defense,

> would have been available to appellants in this case if, for example, they had asserted reasonable grounds to believe that the workers were not aliens or that they had been legally admitted to the United States.

> [*Fierros*, 692 F.2d at 1294]. Significantly, these illustrations depict defendant's understanding of the *factual* events that formed the basis for prosecution. If the facts were as defendant supposed, he would not have the requisite culpability prescribed by the statute.

*Aguilar*, 883 F.2d at 675 (quotations omitted) (emphasis in original).

**[9]** Smith's defense is that he thought he was a citizen and therefore did not need the Attorney General's permission before attempting reentry. In fact, assuming that his belief was reasonable, this case presents the very type of circumstance — where a defendant attempted to follow a lawful process in reentering and is subsequently prosecuted for an illegal 'attempt' to reenter — we sought to exclude in *Gracidas-Ulibarry*, 231 F.3d at 1194 (quoted *supra*). Assuming that Smith could have shown both (1) facts justifying his reliance on his belief that he did not need the Attorney General's permission and (2) a legal theory on which to base a reasonable belief that he was a citizen (i.e., derivative citizenship), he was entitled to offer a defense of mistake of fact. Thus, it was error to exclude the defense and to prevent him from offering evidence to establish it.

The government argues that even if Smith was entitled to present evidence of a defense of reasonable belief, he would not be entitled to a reversal of his conviction on that ground for several reasons. However, because we are reversing the conviction on the issue of alienage, it is unnecessary for us to determine the effect of the district court's error with respect to Smith's reasonable belief defense. Upon remand, should he be tried again, Smith is entitled to present evidence supporting that defense as well as his defense that he is a derivative citizen.

*D. Post-Arrest Statements*

We review *de novo* whether a motion to suppress statements was properly denied. *See United States v. Okafor*, 285 F.3d 842, 845 (9th Cir. 2002).

**[10]** Smith argues that his post-arrest statements should be suppressed because the INS inspector "unreasonably" neglected to electronically record the interrogation, despite the fact that equipment to do so was readily available. We decided this issue in *United States v. Coades*, 549 F.2d 1303 (9th Cir. 1977), in which we declined to mandate electronic recording of post-arrest statements.[10] That decision is binding upon the panel. *See Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir. 1984) (holding that only this court sitting en banc may overrule a prior decision). Accordingly, we hold that the post-arrest statements were properly admitted.

## III.

In summary, we hold that the district court erred in allowing the government to use collateral estoppel offensively to prevent Smith from contesting alienage, an element of the crime, and in barring Smith from contesting that element. As this is reversible error, without more, we REVERSE Smith's conviction and REMAND to the district court for a new trial or other appropriate action.

We also hold that the district court erred in precluding Smith from introducing evidence regarding his reasonable

---

[10]Smith counters that *Coades* has since been effectively overruled by *Dickerson v. United States*, 530 U.S. 428 (2000). In *Dickerson,* the Supreme Court affirmed *Miranda v. United States*, 384 US 436 (1966), acknowledging the appropriateness of judicially determined rules and remedies to protect constitutional rights. *Id.* at 439-40. Despite Smith's argument, we are not persuaded that *Dickerson* permits us, as a panel, to treat *Coades* as no longer binding.

belief defense. On REMAND, if a new trial is held, the defendant is entitled to present evidence as to that defense also.

Finally, we uphold the district court's denial of Smith's motion to suppress his post-arrest statements.

The judgment of conviction is **REVERSED AND REMANDED** for further proceedings consistent with this opinion.