FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 13 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50472 |
| Plaintiff - Appellee, | D.C. No. 3:07-cr-02231-JAH-1 |
| v. | |
| JOSE LUIS CARDENAS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted August 5, 2010
Pasadena, California

Before: KOZINSKI, Chief Judge, REINHARDT and WARDLAW, Circuit Judges.

Jose Luis Cardenas appeals his convictions for illegal reentry, in violation of

8 U.S.C. § 1326, and identity theft, in violation of 18 U.S.C. § 1028A. We have

jurisdiction pursuant to 28 U.S.C. § 1291. We REVERSE both convictions.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

I.

Cardenas was first tried on the illegal reentry charge in January 2008. The jury deadlocked and the district court declared a mistrial. Prior to retrial on the illegal reentry charge, the government returned a second superseding indictment, which added an identity theft charge. The illegal reentry and identity theft charges against Cardenas were severed. Cardenas contends that, prior to his second illegal reentry trial, the district court made an evidentiary ruling that "barr[ed him] from . . . challenging an element of th[at] crime," and was thus structural error. *United States v. Smith-Baltiher*, 424 F.3d 913, 921-22 (9th Cir. 2005). We agree.

Alienage is an element of the offense of illegal reentry. *See id.*; *see also* 8 U.S.C. § 1326. The government's evidence of alienage consisted of the fact that Cardenas had been previously removed and that, in a removal proceeding, he had stated that he was a Mexican citizen. The fact of a prior removal is insufficient to establish alienage. *See United States v. Meza-Soria*, 935 F.2d 166, 170 (9th Cir. 1991). The government's case therefore rested on Cardenas's statement.

Cardenas sought to introduce evidence to cast doubt on the reliability and materiality of his statement of Mexican citizenship. The evidence would have shown that he had been removed under the name Alfonso Pioquinto but that he was not, in fact, Alfonso Pioquinto. At his first trial, there was testimony to the effect

that Cardenas had generally used that name, which belonged to a Mexican citizen, in order to obtain work, as he was underage. This calls into question the materiality of his statement during his removal proceeding: that he, Alfonso Pioquinto, was a Mexican citizen. With such evidence before the jury at his first trial, the jury hung and was ultimately discharged. Without evidence at the second trial regarding Cardenas's use of the name Pioquinto and that the statement at the removal hearing was made in his role as Pioquinto, Cardenas was precluded from "challenging an element of the crime." *Smith-Baltiher*, 424 F.3d at 921-22. At the request of the government, however, the district court precluded Cardenas from introducing any evidence regarding his use of the name Pioquinto or any evidence that he was removed under that name.

"Having notified the court of his intent to introduce evidence challenging an element of the crime, [Cardenas] was entitled to present probative evidence to that effect. Denial of the opportunity to present his defense was, without more, sufficient to warrant reversal."[1] *Smith-Baltiher*, 424 F.3d at 922. Accordingly, we reverse.

_____

[1]We reject the government's argument that Cardenas waived any challenge to the district court's evidentiary ruling when he agreed to be tried to the court on stipulated facts. Cardenas agreed to be tried by the court on stipulated facts only after the court made a definitive ruling excluding the evidence he sought to present.

II.

Cardenas challenges his identity theft conviction on the ground that the offense proved at trial was different than the offense charged in the indictment. We agree that there was a divergence between the offense charged and the offense proved, and we hold that the divergence requires reversal for two reasons: (1) it constituted a fatal variance of the indictment in violation of *United States v. Adamson*, 291 F.3d 606, 615-16 (9th Cir. 2002), and (2) it allowed the jury to convict on the basis of a legally inadequate theory in violation of *United States v. Barona*, 56 F.3d 1087 (9th Cir. 1995).

A.

A fatal variance "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984).

The indictment charged Cardenas with possessing and using without lawful authority "a means of identification of another person, to wit: the name and date of birth of Carlos Jesus Martinez." Prior to trial, Cardenas filed a motion challenging the indictment for vagueness and requesting a bill of particulars. At a hearing on

the motion, the government represented to the court and counsel that the charge was that Cardenas had committed identity theft by stating to a Border Patrol Officer that his name was "Carlos Jesus Martinez" and giving the birth date of a real individual named Carlos Jesus Martinez. It then confirmed that the act charged in the indictment was the giving to the officer on July 17, 2007 the name Carlos Jesus Martinez, and that such was the scope of the charge.

Cardenas's defense at trial was that he had not told the Border Patrol Officer that his name was Carlos Jesus Martinez. Rather, he had told him that he was Carlos Martinez-Casqueda.

At trial, the Border Patrol Officer offered two directly conflicting sworn statements regarding the name that Cardenas had given him. He first testified that Cardenas had given him the name "Carlos Martinez" and that his *present recollection* was that Cardenas had given him that name. He acknowledged, however, that in his contemporaneous report of the incident, he had written that Cardenas had told him that his name was "Carlos Martinez-Casqueda." Subsequently, he testified that the name he was given was Carlos Martinez-Casqueda, and that *such* was his *present recollection* as well. He also confirmed that his contemporaneous report accurately reflected the name that Cardenas had given him, which was Carlos-Martinez-Casqueda. The Officer offered no

explanation as to why he first testified that his *present recollection* contradicted what he wrote in his contemporaneous report, or why he subsequently testified that he now had precisely the opposite *present recollection*.

During closing argument, the prosecutor told the jurors that they should convict if they found that Cardenas had used *either* the name Carlos Martinez *or* the name Carlos Martinez-Casqueda. The jury instructions allowed the jury to convict on either basis, notwithstanding the prosecutor's representation to the court and defense counsel that the act charged in the indictment was specifically the use of the name Carlos Jesus Martinez.

We hold that the discrepancy between the conduct charged in the indictment, as specified at the pre-trial hearing, and the conduct for which the jury was permitted to convict constituted a fatal variance in the indictment and requires reversal. Our conclusion is dictated by *Adamson*, in which the indictment charged the defendant with committing wire fraud by misrepresenting the fact that computer servers had been upgraded. At a pre-trial hearing, the government asserted that the *only* misrepresentation at issue was the one alleged in the indictment: the defendant had misrepresented the fact that servers had been upgraded. *Adamson*, 291 F.3d at 616. The evidence introduced at trial showed, however, that the defendant had misrepresented the way in which the servers had

been upgraded, and the jury was permitted to convict on the basis of that misrepresentation. We held that the divergence between the misrepresentation alleged in the indictment and the misrepresentation proved at trial constituted a variance in the indictment. *Id.*

We do not believe that the divergence in this case between the conduct charged in the indictment, as represented by the government in a pre-trial hearing, and the conduct for which the jury was permitted to convict is materially distinguishable from the divergence at issue in *Adamson,* other than that it is clearer and more willful. Both divergences consisted of differences between the misrepresentation charged and the misrepresentation proved. Accordingly, we hold that the divergence in this case constituted a variance of the indictment.

A variance is subject to harmless error analysis. *Id.* at 615. On the question of harmlessness we also conclude that the facts of *Adamson* are materially indistinguishable from the facts of this case. In *Adamson*, the variance had prevented the indictment from serving its "primary purpose . . . to inform a defendant of 'what he is accused of doing in violation of the criminal law so that he can prepare his defense," and had instead affirmatively misled the defendant about the conduct charged. *Id.* at 616. As a result, the defendant had been "induced . . .

to prepare a defense that would be insufficient to ward off the government's proof at trial." *Id.* For those reasons, we held that the variance was not harmless.

In this case, Cardenas relied on the indictment and the government's pre-trial representations that "what he [wa]s accused of doing in violation of the criminal law," *id.* (quoting *U.S. v. Tsinhnahijinnie*, 112 F.3d 988 (9th Cir. 1997)), was uttering the name Carlos Jesus Martinez to the officer on July 17. He thus based his defense around his testimony that he had instead provided the name Carlos Martinez-Casqueda. This defense was "insufficient to ward off the government's proof at trial." *Id.* Accordingly, we hold that the variance constitutes reversible error.

## B.

The variance also requires reversal for another reason. To sustain the identity theft charge against Cardenas, the government was required to prove that he knew that the name and date of birth that he had used were a means of identification of a real person. *See Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009). To do so, it introduced the testimony of an individual named Carlos Jesus Martinez who had the same birth date that Cardenas had given the Border Patrol Officer. On cross-examination, Martinez explained that, according to the

naming conventions used in Mexican culture, the name Carlos Martinez-Casqueda denotes an individual whose father's last name is Martinez, and whose mother's last name is Casqueda. *Id.* Martinez testified that his mother's last name is Cruz, not Casqueda, that he is not Martinez-Casqueda, and that he has never gone by the name Martinez-Casqueda. *Id.*

The government introduced no evidence that there exists a real person named Carlos Martinez-Casqueda who has the date of birth that Cardenas provided to the Border Patrol Officer. The government's theory that the jury could convict Cardenas of identity theft based on a finding that he had impersonated someone named Carlos Martinez-Casqueda was thus "legally inadequate," *Barona*, 56 F.3d at 1098, because an identity theft conviction cannot be sustained unless the defendant knew that the means of identification used belonged to a real person. *Flores-Figueroa,* 129 S.Ct. 1886. "When the jury is presented with a legally inadequate theory . . . the conviction [must] be vacated and the case retried as to that charge." *Barona*, 56 F.3d at 1098.

## III.

We do not reach Cardenas's prosecutorial misconduct claim, or his claim that the district court erred in denying his motion to suppress the fruits of his

encounter with the Border Patrol Officer. We VACATE his illegal re-entry and identity theft convictions, and REMAND for a new trial.

Chief Judge **KOZINSKI**, dissenting:

The majority is wrong, wrong and wrong again.  Cardenas's convictions are solid as a rock.

First, the district court's evidentiary rulings didn't deprive Cardenas of his right to present a defense.  Contra maj. op. at 3.  At his first trial, Cardenas claimed to be "Carlos Martinez."  See, e.g., United States v. Martinez, No. 07-cr-2231 (S.D. Cal. Jan. 17, 2008) (docket entry 34).  He introduced testimony from a family friend who said that she had known "Mr. Martinez" for 15 years.  This friend testified about "Mr. Martinez's" age, U.S. citizenship and reasons for assuming Alfonso Pioquinto's identity.  After his first trial, the government discovered that "Carlos Martinez" was actually a U.S. citizen whose identity Cardenas had stolen in 1993 and used ever since.  It also discovered that Cardenas was Cardenas, so, at his second trial, he had to proceed under his real name.  See, e.g., United States v. Cardenas, No. 07-cv-2231 (S.D. Cal. Sept. 22, 2009) (docket entry 117).

Since Cardenas could no longer pretend to be Carlos Martinez, the testimony about "Mr. Martinez" that he presented at his first trial retained little, if any, probative value.  What good would it do Cardenas to have a witness testify about knowing Martinez?  The district court's exclusion of such evidence from the

second trial wasn't error at all, much less constitutional error. See United States v. Smith-Baltiher, 424 F.3d 913, 922 (9th Cir. 2005) ("[T]he defendant was entitled to present probative evidence . . . ." (emphasis added)); United States v. Cruz-Escoto, 476 F.3d 1081, 1088 (9th Cir. 2007) ("In considering whether the exclusion of evidence violates due process, this court considers [its] probative value . . . ." (internal quotation mark omitted)). Although Cardenas has a constitutional right to present a defense, that right is subject to reasonable limits. See Fed. R. Evid. 403; Menendez v. Terhune, 422 F.3d 1012, 1033 (9th Cir. 2005). Smith-Baltiher doesn't suspend these limits. See, e.g., United States v. Flores-Villar, 536 F.3d 990, 999 (9th Cir. 2008). Precluding the introduction of evidence that had been made irrelevant by changed circumstances did not deny Cardenas a fair trial.

Second, Cardenas's identity theft conviction is legally sufficient. Contra maj. op. at 8–9. It's undisputed that Cardenas gave a name and a date of birth to the Border Patrol agent. It's also not in dispute that a record check on that information returned a hit for Carlos Martinez, the real-life victim of Cardenas's identity theft. And Cardenas had an original of Carlos Martinez's birth certificate, proving that he knew Martinez was a real person. See United States v. Maciel-Alcala, 612 F.3d 1092, 1094, 1102 (9th Cir. 2010). Thus, the name Cardenas

gave—whether it was "Carlos Martinez-Casqueda" or "Carlos Martinez"—met the statutory definition of a "means of identification of another person," i.e., of the real Carlos Martinez. See 18 U.S.C. § 1028A(a)(1); id. § 1028(d)(7)(A); see also Flores-Figueroa v. United States, 129 S. Ct. 1886, 1893–94 (2009).

Third, the majority tells only half the story when it holds that the prosecutor's representations at the bill of particulars hearing created a fatal variance from the identity theft indictment. See maj. op. at 6–8. Defense counsel asked "if the government is representing to me and to the court that the charges are that on July 17th, 2007, the defendant gave the name [Carlos Martinez and Martinez's] date of birth." The prosecutor answered that defense counsel had "just recited" the "scope of the charges" accurately. According to the majority, this "confirmed that the act charged in the indictment was the giving . . . [of] the name Carlos Jesus Martinez." Maj. op. at 5. But the prosecutor immediately added that "there is a lot of evidence the government will put into a trial . . . . [T]he government has put out in discovery . . . everything [Cardenas]'s ever done with any names." The prosecutor's full statement (not the truncated version the majority cites) put Cardenas on notice that the case against him could involve other names—for example, "Carlos Martinez-Casqueda." There was no variance between the prosecutor's statements at the hearing and her argument at trial that

the jury could convict Cardenas of using the name "Carlos Martinez" or "Carlos Martinez-Casqueda." Cf. United States v. Adamson, 291 F.3d 606, 610 n.2, 616 (9th Cir. 2002) (fatal variance in fraud case where government introduced evidence of a type of misrepresentation different from the one discussed at a pretrial hearing, and where the prosecutor had said at the hearing that no other types of misrepresentations were at issue).

Because there's no merit to Cardenas's claims that the encounter with the Border Patrol agent wasn't consensual, see United States v. Washington, 490 F.3d 765, 771–72 (9th Cir. 2007), or that the prosecutor committed misconduct in her closing argument, see United States v. Reyes, 577 F.3d 1069, 1077 (9th Cir. 2009), I see this as an easy affirm.