**UNITED STATES of America,
Plaintiff-Appellees,**

v.

**Adriano B. FIERROS, Ralph Anthony
Perez, and Roberto Gonzales Fierros,
Defendants-Appellants.**

**Nos. 81–1790 to 81–1792.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1981.

Decided Nov. 26, 1982.

As Modified March 9, 1983.

**1292**

Michael J. McCabe, Richard M. Barnett, San Diego, Cal., James Homola, Fresno, Cal., for defendants-appellants.

Charles F. Gorder, Jr., Asst. U.S. Atty., argued; Peter K. Nunez, U.S. Atty., Charles F. Gorder, Jr., Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiffs-appellees.

Appeal from the United States District Court for the Southern District of California.

Before HUG, FERGUSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Appellants were convicted of conspiracy to transport and harbor illegal aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a). On appeal they contend that the district court's refusal to instruct the jury on their asserted ignorance of the law defense constituted reversible error. They also challenge the district court's denial of their motion for judgment of acquittal. In addition, one appellant, Ralph Anthony Perez, contends that his indictment should have been dismissed because the release of material witnesses violated his due process rights. We affirm.

#### Facts

Adriano Fierros ("Adriano") is a labor contractor who supplies workers to farms in the Madera, California area. He employed his father, Roberto Fierros ("Roberto"), and Ralph Perez as foremen. Anticipating a substantial demand for workers during the tomato harvest, Adriano contracted with Andres Guillen[1] for the transportation of workers to Madera. Adriano told Guillen he preferred workers from the Mexican state of Oaxaca. It was agreed that if Guillen brought Oaxacans who could not pay the entire $80–$100 transportation fee, Adriano would pay Guillen the balance upon delivery. Adriano also agreed to deduct any portion of the transportation fee owed to Guillen by other non-Oaxacan workers from their first week's wages and remit it to Guillen at the time of the next delivery. Pursuant to this agreement Guillen delivered between 250 and 300 alien workers to Adriano during the summer of 1981.

Guillen recruited the workers in San Diego County and transported them to Madera in rented trucks. A scout car preceded each truck to watch for border patrol agents. Perez or Adriano met the trucks in Madera to take custody of the workers and receive a list specifying the amount due for each worker's transportation. The workers were then transported to the fields in a bus that was equipped with a scanner device tuned to the border patrol's radio frequency.

Several truckloads of workers sent by Guillen from San Diego County were intercepted by the border patrol, and the drivers arrested. After these arrests, Guillen hired Robert Velasquez to drive. Velasquez notified the border patrol and agreed to participate in the scheme as a government informant. Velasquez testified that he delivered truckloads of workers to Perez on several occasions. He also witnessed discussions that Adriano and Roberto had with Amador Bonillo, the scout car driver, concerning future deliveries. On two occasions Velasquez delivered loads of workers infiltrated by undercover border agents to Adriano or Perez. On the second of these occasions, August 27, 1981, Perez accepted a load of workers that included five undercover agents. The agents were loaded onto the radio equipped bus and put to work. Later that day, Adriano paid Velasquez for the transportation of one of those agents, using a check signed by Adriano and payable to the worker-agent under his assumed name.

---

1. Guillen was indicted with appellants but is not a party to this appeal.

Perez was arrested that same day, August 27, as he drove the bus carrying workers to the fields. Seventeen illegal aliens found riding on the bus were arrested with him and detained until September 9, when the magistrate ordered their release. Adriano and Roberto were also arrested on August 27. Perez, Adriano and Roberto were indicted for conspiracy to harbor and transport aliens, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a). They were convicted in a jury trial.

*Ignorance of the Law*

Appellants argue that the district court erred in precluding their presentation of a defense based on ignorance of the law. Section 1324(a) imposes criminal liability on any person who knowingly or willfully conceals or harbors any alien not legally in the United States. The statute also provides that employment, which is defined to include the usual and normal practices incident to employment, shall not be deemed to constitute harboring.[2]

At trial appellants' defense focused on the employment exception to § 1324(a). Appellants did not deny that the workers delivered to them by Guillen were illegal aliens, nor that they knowingly transported them within the United States. They claimed, however, that paying Guillen for the workers' transportation and subsequently transporting them by bus to the fields were "usual and normal practices incident to employment" and thus could not

subject them to criminal liability. Alternatively, they contended that if their activities were not shielded by the employment exclusion, their mistaken belief that they did act incident to the workers' employment was justifiable ignorance of the law which negated the "specific intent" required by § 1324(a).

Appellants' primary argument on appeal is a renewal of the latter contention. They offered to prove at trial that Adriano believed his activities were incident to his employment of workers and were thus lawful.[3] Adriano also proposed to testify that he had advised Perez and Roberto that their participation in the scheme was lawful. Adriano's conclusions were allegedly based in part on his telephone conversation with a border patrol agent who told Adriano that he was not under investigation at that time. The district court excluded the proffered evidence and refused to give a jury instruction that ignorance of the law should be considered in determining the existence of specific intent. *See* Devitt and Blackmar, *Federal Jury Practice and Instructions* § 14.10. Appellants contend that the district court's rulings were in error because § 1324(a) requires a showing that the defendants knew that their conduct was illegal.

Appellants' contention is supported neither by § 1324 nor by the authority upon which they rely. Section 1324(a)(2) states that any person is guilty of

---

**2.** 8 U.S.C. § 1324(a) provides in part:

Any person, including the owner, operator ... agent or consignee of any means of transportation who

\* \* \* \* \* \*

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law; [or]

(3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation;

\* \* \* \* \* \*

any alien ... not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States ... shall be guilty of a felony .... *Provided, however,* that for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

**3.** Although the exception for employment practices is specified in § 1324(a)(3) to apply only to "harboring" aliens, the government concedes that it may in substance be applicable to limited transportation of aliens in connection with employment. *See United States v. Moreno,* 561 F.2d 1321 (9th Cir.1977).

a felony who transports an alien "knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto. . . ." Section 1324(a)(3) provides that one is similarly guilty who "willfully or knowingly conceals, harbors, or shields from detection . . . any alien . . . not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States . . . ." While these provisions require knowledge or willfulness, they do not by their terms require knowledge that the actions engaged in violate the statute. On the contrary, the first requirement of knowledge is that of the status of the alien, and the second requirement of willfullness or knowledge goes to the fact of concealing, harboring or shielding from detection. The proviso upon which appellants rely simply states that "employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." Nothing in the proviso deals with knowledge or intent, or the effect of their absence. It stretches the language unduly to read it as meaning that "activities believed by the defendant to be employment" are outside of the proscription of the Act.[4]

Appellants assert, however, that when a crime includes a requisite element of specific intent, an instruction must be given that ignorance of the law may be considered to negate the existence of that intent. They rely on such cases as United States v. Petersen, 513 F.2d 1133 (9th Cir.1975) and United States v. Lizarraga-Lizarraga, 541 F.2d 826 (9th Cir.1976). Appellants' contention, however, is much too broad to be accepted here and the cases upon which they rely are distinguishable.

A moment's thought is enough to refute the general proposition that ignorance of law is a proper defense to any crime requiring specific intent. To obtain a conviction for assault with intent to commit murder, the prosecution must prove a specific intent to kill. E.g., United States v. Jones, 681 F.2d 610 (9th Cir.1982). It is clear, however, that one accused of such an offense is not entitled to the defense that he entertained a good faith belief that it did not violate the law to assault someone with the intent to kill him.

■ There are however, two categories of cases in which a defense of ignorance of law is permitted even though it is not specifically written into the criminal statute. In our view, the present case falls into neither. The first category involves instances where the defendant is ignorant of an independently determined legal status or condition that is one of the operative facts of the crime. An example is United States v. Petersen, supra, the first case relied upon by appellants. In that case defendant was charged with embezzlement or theft of federal property in violation of 18 U.S.C. § 641, a crime requiring proof of specific intent. We held there that Petersen was entitled to an instruction on his defense that he reasonably believed that the person from whom he bought the property was legally authorized to sell it. In such a case, the mistake of the law is for practical purposes a mistake of fact. See also United States v. Barker, 546 F.2d 940, 946–54 (D.C. Cir.1976); United States v. Currier, 621 F.2d 7, 9 n. 1 (1st Cir.1980) (citing United States v. Freed, 401 U.S. 601, 612, 91 S.Ct. 1112, 1119, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring)). This type of defense would have been available to appellants in this case if, for example, they had asserted reasonable grounds to believe that the workers were not aliens or that they had been legally admitted to the United States. It cannot be extended to cover an assertion that, while they knew that the workers were illegal aliens, and they knew they were transporting or shielding them, they

---

**4.** The legislative history of § 1324 provides no elaboration of its meaning. The House Report merely notes that the section was drafted in its present form to overcome the effect of United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948), which held that the prior statute provided no penalty for concealing and harboring illegal aliens. H.R.Rep. No. 1365, 82d Cong., 2d Sess., reprinted in 1952 U.S.Code Cong. & Admin.News 1653, 1724.

were unaware that § 1324 prohibited their conduct.

The second category of cases in which a defense of ignorance of the law has been read into criminal statutes involves prosecution under complex regulatory schemes that have the potential of snaring unwitting violators. *United States v. Lizarraga-Lizarraga, supra,* the second case relied upon by appellants, falls into this category. There we held that a defendant could not be convicted of exporting a prohibited substance, in violation of 22 U.S.C. § 1934, absent a showing that he knew that export of the substance in question was prohibited. We relied on two factors: The statute prohibited the export of a list of items not found in the statute itself, and the list included many items that were not known to be subject to government control and that might be innocently imported or exported. *Accord, United States v. Davis,* 583 F.2d 190 (5th Cir.1978); *see also United States v. Granda,* 565 F.2d 922 (5th Cir.1978); *cf. Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (due process requires proof of knowledge of ordinance requiring felons to register upon entering city). The same considerations have led to rulings that a conviction for "willful" violations of the tax laws requires a showing of intentional violation of a known legal duty. *See United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). Those decisions are based on the recognition that the tax "law is complicated, accounting treatment of various items raises problems of great complexity, and innocent errors are numerous.... [I]t is not the purpose of the tax law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care." *Spies v. United States,* 317 U.S. 492, 496, 63 S.Ct. 364, 366, 87 L.Ed. 418 (1943).

■ We do not believe that § 1324(a) is so complex or so likely to ensnare innocent violators that the unusual defense of ignorance of the law must be read into it. The statute's prohibitions are neither detailed nor arcane. The subject matter—transportation and harboring of illegal aliens—is one highly likely to be subject to governmental regulation. It is true that mere transportation of illegal aliens to and from the fields on the ranch or farm where they are working does not fall within a fair reading of the prohibitions of § 1324. *United States v. Moreno,* 561 F.2d 1321 (9th Cir.1977). It is not reasonable to conclude from that fact, however, that employers will innocently assume that the law is unconcerned with such practices as transporting the aliens in trucks with radios tuned to border patrol frequencies in order to "protect" the illegal aliens. In sum, we see no compelling justification for reading into § 1324 the defense of ignorance of the law offered by appellants with all of its potential for interference with Congress's scheme for policing the traffic in illegal aliens. We attribute to Congress no intent to depart from the traditional rule. *See United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 563, 91 S.Ct. 1697, 1700, 29 L.Ed.2d 178 (1971). The district court was accordingly correct to apply it. *See United States v. Williams,* 685 F.2d 319 at 321 (9th Cir.1982).

## Motion for Judgment of Acquittal

Appellants moved for a judgment of acquittal at the close of the government's case. They argued that the government had failed to prove one of the essential elements of the crime of transportation—that an object of the alleged conspiracy was to transport workers who had illegally entered the United States within the last three years. *See United States v. Gonzalez-Hernandez,* 534 F.2d 1353, 1354 (9th Cir. 1976); 8 U.S.C. § 1324(a)(2). The district court denied the motion.

■ Proof that appellants knew they were transporting aliens who had illegally entered the United States within the last three years may be based upon circumstantial evidence. *United States v. Herrera-Medina,* 609 F.2d 376, 380 (9th Cir.1979). All evidence must be viewed in the light most favorable to the government to deter-

mine whether any rational trier of fact could have found beyond a reasonable doubt that appellants knew the workers had entered within the last three years. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. DeRosa,* 670 F.2d 889, 893 (9th Cir.1982).

■ The government's evidence satisfied this standard. In particular we note that Adriano sought and received workers from Oaxaca, Mexico. Workers were brought to Madera in the cargo compartments of rented trucks and paid between $80 and $100 each for the privilege. They were transported at night and appellants kept radios tuned to the Border Patrol frequencies "to protect them." These circumstances in and of themselves were sufficient to support an inference that appellants were aware of the workers' recent entry. *See United States v. Boerner,* 508 F.2d 1064, 1068 (5th Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2418, 44 L.Ed.2d 681 (1975). The district court did not err in denying appellants' motion for judgment of acquittal.

### Release of Material Witnesses

■ Perez sought dismissal of the indictment, claiming that the release of the seventeen illegal aliens who were arrested with him violated his due process rights. Adriano and Roberto had stipulated to the release at their initial appearance before the magistrate. Perez was not then represented by counsel and did not enter the stipulation. The magistrate subsequently ordered the aliens released over the government's objection.

The district court denied the motion to dismiss, concluding that the magistrate's decision to release the witnesses was not an abuse of discretion because Perez had not shown that their testimony could be of conceivable benefit to him. *See United States v. Martinez-Morales,* 632 F.2d 112, 114–15 (9th Cir.1980); *United States v. Carrillo-Frausto,* 500 F.2d 234, 235–36 (9th Cir.1974).

The Supreme Court recently rejected the conceivable benefit test, holding that the release of witnesses does not require dismissal of an indictment unless the defend-

ant shows that the witnesses' testimony would have been both material and favorable to his defense. *United States v. Valenzuela-Bernal,* —— U.S. ——, ——, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). Perez made no effort to explain what material favorable evidence the departed witnesses would have provided for his defense. The witnesses in question were all involved in one specific incident of transportation and harboring. The evidence presented at trial indicated that Perez was involved in the conspiracy over an extended period of time. The evidence of acts performed on occasions other than that in question was sufficient to support his conviction. Indeed, it is difficult to see what possible evidence the released witnesses could have supplied which would in any way have aided his defense. The district court did not err in denying his motion to dismiss the indictment. *See United States v. Marquez-Amaya,* 686 F.2d 747 (9th Cir.1982).

AFFIRMED.