**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

SCOTT WILLIAM HILGERS,
        *Defendant-Appellant.*

No. 08-30078

D.C. No.
6:7-cr-00012-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
December 8, 2008—Portland, Oregon

Filed March 11, 2009

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Steven C. Haddon, Haddon Law Office, Helena, Montana, argued the cause for the defendant-appellant and submitted a brief.

Carl E. Rostad, Assistant United States Attorney, Great Falls, Montana, argued the cause for the plaintiff-appellee and submitted a brief. William M. Mercer, United States Attorney, was on the briefs.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether an above-Guidelines prison sentence of a mortgage broker convicted of wire fraud is reasonable.

I

A

Scott Hilgers was a mortgage broker, that is, one who finds homeowner buyers for institutional mortgage lenders. Hilgers brokered mortgages on four separate residences in Helena, Montana, for property owner Todd Rice. Each mortgage was for 100% of the property's value in varying principal amounts totaling $686,000. Because Rice did not have sufficient income to qualify for even one of these mortgages, Hilgers

and Rice agreed to use counterfeit W-2 statements to deceive lenders. In addition, because it is easier to get a loan for a house in which the owner will live, Rice represented in paperwork for each of the four mortgages that the property in question would be his primary residence. In fact, none of the four houses were Rice's primary residence.

The mortgage lenders indicated that, if they had known about the misrepresentations, they would not have funded the loans. If they were compelled to lend, they at least would have charged higher rates of interest and required a 10% down payment in each case. Each lender indicated that it had suffered no loss but would suffer losses if Rice were to default on the loans. One mortgage lender indicated that it would have demanded $1,539 in fees had Rice provided accurate information on his loan application.

B

Hilgers and Rice pled guilty to wire fraud in violation of 18 U.S.C. § 1343. The probation officer computed the offense level, with the base offense level at seven. The offense level was increased by eight levels because the intended loss amount was $70,139. The officer calculated this number by considering the down payments that would have been required had the lenders been forced to lend the money knowing the true facts ($686,000 $x$ 10%), as well as the lost $1,539 in fees. Two levels were added for abuse of a position of trust or use of a special skill, because Hilgers was licensed, trained, and knowledgeable about the mortgage industry. The offense level was reduced by two points for acceptance of responsibility, and by another point for timely notification of the plea. The resulting offense level was fourteen. Hilgers had a long criminal history, including convictions for passing bad checks, embezzlement, and other fraudulent conduct. His criminal history category was Category V. The Probation Officer thus set the Guidelines range at 33 to 41 months.

## C

The pre-sentence report also touched on a few miscellaneous matters. A note from a state probation officer expressed concerns that Hilgers was financially manipulating his wife and mother, and reported:

> Victims have repeated over and over that Hilgers presented himself as an honest individual who gained their trust, could then look them straight in the eye, and knowingly tell the most outrageous lies. I have heard the phrase "this guy is a master manipulator" on way too many occasions.

Hilgers wrote a letter to the sentencing judge in which he claims to have "accepted full responsibility for [his] unethical and criminal behavior from the initial moments of the investigation." He stated that he "can offer no excuses for [his] role in this despicable criminal act," but then went on to state that, "[p]erhaps, [he] was under considerable pressures from several realtors, property owners and the actual lender to complete these transactions," particularly because the incomes of everyone involved in the process were based on volume commission.

## D

At sentencing, Hilgers objected to the loss calculation performed by the probation officer, stating that it was too speculative. The trial judge agreed, setting Hilgers' offense level at seven[1] and noting that the Guidelines sentence for an offense

---

[1]The court computed the base office level at seven, with a two-point increase for abuse of a special skill or position of trust, and a two-point decrease for acceptance of responsibility. The one-point timely plea decrease is not available unless the offense level prior to the acceptance-of-responsibility reduction is at least sixteen.

level of seven and criminal history Category V was 12 to 18 months.[2]

Nevertheless, immediately upon calculating the Guidelines range excluding any loss amount enhancement, the sentencing court found that "a reasonable sentence would be above the [defendants'] guidelines ranges." The court went on to state, "*I have to set the guidelines aside* because we are outside the heartland, and I have to fashion a sentence based on the statutory factors."

After hearing from the defendants, the district judge sentenced Hilgers to five years in prison, to be followed by five years of supervised release. Hilgers timely appeals.

## II

[1] Hilgers argues that "the Guidelines were not utilized in crafting the sentence imposed." Because he did not raise this claim below, review is for plain error. *See United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006). "[G]iven the District Court's ruling [that] it was setting aside the Guidelines," Hilgers asserts, "it failed to keep the Guidelines in mind throughout the sentencing process." However, the trial judge pointed out that his reference to setting aside the Guidelines was part of a clarification. Hilgers' attorney had objected to the judge "departing from . . . consideration of" the Guidelines. The judge reminded counsel that a "departure" from the Guidelines is a term of art, pointing out that the word "depart" "sometimes has a pretty technical" meaning. Here, as in *United States v. Carty*, 520 F.3d 984, 994 (9th Cir.) (en banc), *cert. denied*, 128 S. Ct. 2491 (2008), "[t]o the extent the sentencing judge's initial characterization was inopportune, we cannot say that it was significant procedural

---

[2]The government does not appeal the district court's decision not to use the loss figures provided by the probation officer. Thus, the correctness of that decision is not before us.

error because the court corrected itself." Absent the court's remark about setting aside the Guidelines, Hilgers can offer no evidence that an error (much less plain error) occurred.

**[2]** A defendant has no right to a Guidelines sentence. *See id.* at 991 ("[T]he Guidelines factor [should not] be given more or less weight than any other."). The mere fact that the Guidelines sentence is substantially more or less severe than the sentence imposed hardly demonstrates that the Guidelines were not considered. *See Gall v. United States*, 128 S. Ct. 586 (2007) (upholding a sentence of probation as reasonable where the Guidelines sentence was 30 to 37 months).

**[3]** Hilgers also argues that the trial judge failed to "adequately . . . explain the sentence selected, including any deviation from the Guidelines range." *Carty*, 520 F.3d at 993. Although the judge merely mentioned that the case is out of the heartland when deciding to impose a non-Guidelines sentence, the rest of the facts found at sentencing (e.g., that Hilgers is a con man in need of a long period of incarceration for deterrence) expand on the simple "heartland" explanation. There is no plain procedural error in this case.

## III

As to the substantive sentencing issue, review of a district court's sentence is for reasonableness. *Gall*, 128 S. Ct. at 591. The court noted that Hilgers had "quite a criminal history" and had "repeatedly been engaged in fraudulent conduct in the past [including] similar fraudulent conduct." "[T]he record reflects," the court asserted, "that [Hilgers is] a con man [with] . . . a very sordid history with the Department of Corrections." The court told Hilgers: "Even your current victims, including your mother, seem to still think highly of you, and you have cheated and committed fraud on your own mother. Repeatedly here." Even though "the nature of this offense is not uncommon in the real estate industry," the district judge found that Hilgers had "stretched it . . . to the maximum." He

was "the person in the position to facilitate the crime, and [was] the person without whom the crime would not have occurred."

The court then discussed the § 3553 factors, noting that it had given consideration to the requirement that the sentence imposed reflect the seriousness of the offense and promote respect for the law, and the requirement to impose just punishment for the offense. On deterrence, the court stated: "I don't know if there is an effective way to deter a repeated con man from cheating and defrauding others, but I think that a five-year consecutive sentence in this case will go a long way to accomplishing that result." The court also stated that the interests of protecting the public would be served by the sentence. Considering the kinds of sentences available, the court noted that probation was not authorized. The court asserted that the punishments imposed on Hilgers and Rice (who received one year in prison but had neither abused a special skill nor amassed any criminal history) were free of unwarranted sentencing disparities.[3]

**[4]** In challenging the sentence, Hilgers emphasizes that it is much higher than the Guidelines sentence. However, an appeals court may not presume that an out-of-Guidelines sentence is unreasonable. *Carty*, 520 F.3d at 994. Furthermore, section 2B1.1(b) of the Guidelines was clearly written with the assumption that the amount of loss could be ascertained. Ascribing a loss of $0 to Hilgers' conduct because the losses may or may not happen clearly understates the seriousness of the violation. It is appropriate for the district court to tailor the sentence to the seriousness of the defendant's conduct, *see* 18 U.S.C. § 3553(a)(1), and the district court's consideration of the large potential loss that could result from Hilgers' action was not unreasonable.

---

[3]Rice's sentence is not before us.

**[5]** It is true that a more compelling reason should be required where the deviation is large. *See Gall*, 128 S. Ct. at 597 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."). The departure here is large — Hilgers was sentenced to 3 years longer than the top of the Guidelines range and almost three times the uppermost Guidelines sentence of eighteen months. However, given the various factors considered by the district court — chief among them the inadequacy of the Guidelines sentence in reflecting the potential loss to the victims — we cannot say that a five-year sentence was unreasonable. The district court's conclusion that a significant sentence was necessary to accomplish the purposes of the Sentencing Reform Act is supported by its findings as to Hilgers' past criminality, his lack of response to prior sentences, his personal characteristics and his lack of remorse.

**AFFIRMED.**[4]

---

[4]Hilgers alleges that the district court judge improperly considered during sentencing certain financial dealings between Hilgers and his mother, as well as between Hilgers and his wife. Because Hilgers did not object to the factual accuracy of the Pre-Sentence Report ("PSR"), the district court was entitled to treat the factual assertions therein as established. Fed. R. Crim. Proc. 32(i)(3)(A). The trial court did not plainly err when it found, based on the facts as reported in the PSR, that Hilgers had defrauded his mother and his wife.