**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10479 |
| Plaintiff - Appellee, | D.C. No. 3:10 cr-08216- DGC |
| v. | |
| KENNITH LEE DEFOOR, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted August 13, 2015
San Francisco, California

Before:    REINHARDT, TASHIMA, and CALLAHAN, Circuit Judges.

Kennith Defoor appeals from his conviction for conspiring to defraud the

United States and filing false claims against the United States through a fraudulent

income tax return scheme in violation of 18 U.S.C. §§ 2, 286, 287.  Defoor did not

raise any of the issues he presses in this appeal in the district court; accordingly, we

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

review each issue for plain error. *See United States v. Hilgers*, 560 F.3d 944, 946 (9th Cir. 2009). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** Defoor argues that the district court plainly erred by allowing the government to elicit testimony from IRS Agents Shelly Bare and Patrick Bauer that he filed "false" tax returns.

**a.** First, Defoor contends that, by testifying that Defoor filed "false" tax returns, Agents Bare and Bauer impermissibly "testified to the legal conclusion" at issue in the case (*i.e.*, whether the claims Defoor filed were "false") in violation of Federal Rules of Evidence 701, 702, 704, and 403. Although Federal Rule of Evidence 704(a) specifically provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), it "does not lower the bar[] so as to admit all opinions." Fed. R. Evid. 704 advisory committee's notes. Rules 701 and 702 require opinions to "be helpful to the trier of fact," and Rule 403 "provides for exclusion of evidence which wastes time." Fed. R. Evid. 704 advisory committee's notes. Together, these rules prevent a witness from giving "an opinion as to her *legal conclusion, i.e.*, an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation omitted).

Although determining whether an opinion is a "legal conclusion" can be a difficult task, our case-law helps guide this inquiry. In *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977) (per curiam), we concluded that it was permissible for experts to testify that the defendant had "voluntarily rob[bed] a bank" and "act[ed] under fear of death or grave bodily harm" because "[t]he average lay[person] would understand those terms and ascribe to them essentially the same meaning intended by the expert witness." *Id.* at 1351. Similarly, in this case, it is clear that, when Agents Bare and Bauer testified that Defoor's claims were "false," they were using the term in a manner that the "average lay[person] would understand." *Id.* Defoor has not identified, nor have we found, any authority suggesting that the term "false" has a specialized meaning in the law that is different from what the term means in the vernacular. Moreover, nothing in the record suggests that, when Agents Bare and Bauer testified that the claims were "false," they intended the term to mean anything other than what it does in common parlance. Accordingly, the district court did not commit plain error by allowing Agents Bare and Bauer to testify that the claims Defoor filed were "false."

      **b.**     Defoor further argues that, by permitting Agent Bare to testify that the claims he filed were "false," the district court "allow[ed] the government to commit ambush by expert," because her testimony went beyond the scope of the

3

United States' pretrial notice of expert testimony, in violation of Federal Rule of Criminal Procedure 16(a)(1)(G). This argument has little merit: at least two years before trial, the government notified Defoor that Agent Bare would "opine that the income tax returns prepared by defendants and turned over in discovery are *inaccurate* and that defendants' claims for tax refunds have no basis in U.S. income tax law."

Defoor contends that this notice was insufficient: according to Defoor, this notice failed to inform him that Agent Bare would "testify using the exact terminology from the statute regarding the very question that the jury must resolve in this case, namely whether these returns constituted false claims." Defoor's argument rests on his assertion that the term "false" is different from the term "inaccurate." We reject this distinction: the two terms are synonyms. *See* Merriam-Webster's Thesaurus, "False," http://www.merriam-webster.com/thesaurus/false (last visited August 17, 2015) (identifying "inaccurate" as a synonym for "false"). Accordingly, the district court did not commit plain error in violation of Rule 16 by allowing Agent Bare to testify that the claims Defoor filed were "false."

**c.** Defoor also argues that the district court plainly erred by permitting Agent Bauer, a "case agent," to testify as an expert. This argument is premised on Defoor's contention that, by testifying that the claims Defoor filed were

"false," Agent Bauer offered an "expert" opinion. However, at least in this case, testifying that a claim was "false" required no specialized expertise: as discussed above, when Agent Bauer testified that Defoor's claims were "false," he used the term in a manner that the "average lay[person] would understand." *Hearst*, 563 F.2d at 1351. Accordingly, the district court did not commit plain error by allowing Agent Bauer to testify that the claims Defoor filed were "false."

**2.** Next, Defoor argues that the trial court erred by "unilaterally investigating and resolving a juror's report of potential jury tampering" – a phone call received by Juror Number 9 or her husband during trial[1] – without holding an evidentiary hearing or applying the presumption of prejudice required by *Remmer v. United States*, 347 U.S. 227 (1954).

The *Remmer* presumption does not attach to every allegation of jury tampering or misconduct. Rather, a court must "first determine whether a defendant has made a prima facie showing that the intrusion had . . . an adverse effect on the deliberations." *United States v. Henley*, 238 F.3d 1111, 1115 (9th Cir. 2001) (citation omitted); *accord United States v. Rutherford*, 371 F.3d 634, 643 (9th Cir. 2004) (noting that *Remmer* does not apply in cases involving instances of "more prosaic kinds of jury

---

[1] The record is unclear as to whether Juror Number 9 or her husband received the phone call at issue. This discrepancy does not affect our analysis.

5

misconduct" (citation omitted)).  This "adverse effect standard is a low one:  Unless the district court finds that this showing is entirely frivolous or wholly implausible, it must order a *Remmer* hearing to explore the degree of the intrusion and likely prejudice suffered by the defendant."  *Henley*, 238 F.3d at 1115 (citation omitted).

Here, Defoor fails to meet even this "low" threshhold.  It is "wholly implausible" for Defoor to suggest that the phone call received by Juror Number 9 (or her husband) had an "adverse effect" on the jury deliberations.  The caller simply asked Juror Number 9 (or her husband) if she (or he) owed money to the IRS and, upon questioning by Juror Number 9 (or her husband), hung up.  This single question cannot plausibly be interpreted as even an indirect attempt to coerce or otherwise distract Juror Number 9 from her duties as a juror.  Moreover, nothing in the record supports the inference that the call intimidated, distracted, or affected Juror Number 9's peace of mind during jury deliberations.  To the contrary, the record allays any such concerns:  Juror Number 9 testified that the call would not affect her "ability to be a fair and impartial juror to both sides."  Similarly, Juror Number 8 – the only other juror that the record reflects knew about the call and its contents – testified that he or she would be "able to retain a fair and open mind and not be influenced by the fact that this coincidence occurred."  Both jurors further testified that the call left

them without "any lingering concern" that it "might actually be associated with the real Internal Revenue Service."

The phone call and the trial are connected only because they are tangentially related to the same subject. This attenuated link, by itself, is not enough to require application of the *Remmer* presumption. *See Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("[I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote."). Accordingly, the district court did not commit plain error by failing to attach the *Remmer* presumption to the alleged incident of jury tampering.[2]

**3.** Finally, Defoor argues that three of the district court's jury instructions were plainly erroneous.

**a.** First, Defoor argues that the district court's § 287 instruction was plainly erroneous. To sustain a conviction under § 287, the "government must prove that the defendant (1) presented a claim against the United States and (2) knew such claim to be false." *United States v. Atalig*, 502 F.3d 1063, 1067 (9th Cir. 2007). The district court's § 287 instruction was entirely consistent with this precedent.

---

[2] Defoor also offers a conclusory, one-sentence contention that, by conducting its investigation outside of his presence, the district court violated Fed. R. Crim. P. 43. Defoor fails to provide either argument or analysis in support of this contention; accordingly, we conclude that this contention is waived. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

7

Nonetheless, Defoor argues that it was erroneous for two reasons. First, he argues that the instruction was incorrect because it did not "require[] the jury to find that the claims were consciously inaccurate, nor that Mr. Defoor knew them to be false at the time he made them." This argument is belied by the instruction itself, which required the jury to find that Defoor "knew the claim[s] w[ere] false."

Second, Defoor argues that the instructions were erroneous because they "did not require the jury to conclude that the defendant acted with a consciousness that he was doing something wrong or that violated the law." This argument has little merit: it is axiomatic that "ignorance of the law or a mistake of law is no defense to criminal prosecution." *United States v. Liu*, 731 F.3d 982, 989 (9th Cir. 2013) (quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991)). Although we have recognized two exceptions to this rule, *see United States v. Fierros*, 692 F.2d 1291, 1294 (1982), *as modified* (9th Cir. 1983), neither we, nor the Supreme Court, has ever held that § 287 falls within either exception.[3] Accordingly, the district court's § 287 instructions were not plainly erroneous.

---

[3] Defoor cites two decisions from the Fourth Circuit, *United States v. Bolden*, 325 F.3d 471, 494 (4th Cir. 2003) and *United States v. Maher*, 582 F.2d 842, 847 (4th Cir. 1978), that lend some marginal support to his position. However, the district court's failure to include an instruction derived from non-binding, out-of-circuit authority is not plain error. *See United States v. Bear*, 439 F.3d 565, 569 (9th Cir. 2006) ("An error is plain if it is 'clear' or 'obvious' under current law." (citation omitted)).

**b.** Next, Defoor argues that the district court's aiding and abetting instruction was plainly erroneous. Specifically, Defoor argues that the "aiding and abetting the charge of false claims" and "the definition of knowledge" instructions were "obviously inconsistent," such that the jury was permitted to "convict under an aiding and abetting theory without proof of the required mental state for aiding and abetting." This argument has little merit: there was nothing "inconsistent" in the district court's aiding and abetting instruction and its knowledge instruction. Rather, the latter instruction simply provided further guidance as to what term "knowingly" meant. Moreover, the district court's aiding and abetting instruction did not permit the jury to convict Defoor "without proof of the required mental state" for the crime: the district court's aiding and abetting instruction (including the *mens rea* requirement) was entirely consistent with the relevant Ninth Circuit Model Jury Instruction. Accordingly, the district court's aiding and abetting instruction was not plainly erroneous. *See United States v. Benford*, 574 F.3d 1228, 1231 n.1 (9th Cir. 2009) (a district court does not commit plain error if it "follow[s] the Ninth Circuit

9

Model Jury Instructions and require[s] the jury to find all the statutory elements of the crime").[4]

      **c.**      Finally, Defoor argues that the district court's § 286 instruction was plainly erroneous for two reasons. First, Defoor faults the district court for failing to instruct the jury that, in order to convict Defoor under § 286, it had to find that he knew that what he was doing was "unlawful[]." As discussed above, this argument is meritless: "ignorance of the law or a mistake of law is no defense to criminal prosecution." *Liu*, 731 F.3d at 989 (quoting *Cheek*, 498 U.S. at 199). And, although there are two exceptions to this rule, Defoor does not cite, nor have we found, any decision holding that § 286 falls within either exception.

Defoor also argues that the district court's § 286 instruction was erroneous because it "failed to instruct the jury that they must find that Mr. Defoor entered into an agreement to defraud the United States." The government has waived any argument that this instruction was not plainly erroneous by failing to respond to this argument in its answering brief. *See United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007). However, even assuming that the § 286 instruction was

---

[4]      In his reply brief, Defoor suggests that the district court erred by failing to instruct the jury that, in order to convict Defoor of aiding and abetting a § 287 violation, it had to find that he knew that what he was doing was "unlawful." Because Defoor raised this issue for the first time in his reply brief, it is waived. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).

plainly erroneous, we decline to overturn his conviction on this basis because Defoor has not met the final prong of the plain error analysis. That is, he has failed to demonstrate that any error in this instruction "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011) (citations omitted). Defoor provides no explanation as to how the (asserted) failure to instruct the jury that it had to find that Defoor entered into an agreement to defraud the United States meets this prong of the plain error analysis; indeed, his briefs do not even mention it. In any event, such an argument would have failed. Even where jury instructions omit an essential element of a crime, we "nonetheless may affirm if the record contains strong and convincing evidence that the missing element of the crime was adequately proved by the prosecution, such that it is extremely unlikely that a properly instructed jury would not have convicted." *United States v. Romm*, 455 F.3d 990, 1005 (9th Cir. 2006) (citation omitted). Here, the evidence that Defoor entered into an agreement with his daughter and son-in-law to defraud the United States was overwhelming: together, they filed 122 false returns, knowing that the incomes and/or withholdings stated were false. On this record, it is extremely unlikely that *any* jury would not have convicted Defoor of a violation of § 286. Accordingly, the district court's § 286 instruction was not plainly erroneous.

**AFFIRMED.**



_**USA v Kennith Lee Defoor 14-10479**_

REINHARDT, Circuit Judge, concurring:

I concur in the memorandum disposition, but write separately because I believe that the question whether § 287 permits an ignorance of the law defense[1] in this case is more complicated than the disposition suggests. In _United States v. Fierros_, we recognized that in certain kinds of cases "a defense of ignorance of law is permitted even though it is not specifically written into the criminal statute." 692 F.2d 1291, 1294 (9th Cir. 1982). We explained that one such type of case is a prosecution "under [a] complex regulatory scheme[] that ha[s] the potential of snaring unwitting violators." _Id._ at 1295. We illustrated the need for allowing a mistake of law defense in those cases using the example of tax law, which "raises problems of great complexity" and in which "innocent errors are numerous." _Id_ (internal quotation omitted)_; see also Cheek v. United States,_ 498 U.S. 192 (1991) (recognizing an ignorance of the law defense implicit in a criminal tax statute); _United States v. Bishop_, 412 U.S. 346 (1973) (same).

Defoor was convicted of tax related malfeasance, but § 287 also covers a wide variety of relatively straightforward activity, like a federal government employee overstating his reimbursable travel expenses. We have not determined

---

[1]I use the term loosely since we are actually talking about an element the government must prove, rather than a formal defense.

whether the *Fierros* exception is applicable in statutes that can be violated by a failure to comply with a complex regulatory regime, but also by other kinds of wrongdoing. Similarly, we have not decided whether under *Fierros* we will sometimes read an ignorance of the law defense into a statute that uses only the word "knowingly"—as § 287 does—rather than "willfully." *See Bryan v. United States*, 524 U.S. 184, 193 (1998) (the use of "knowing" in a criminal statute does not ordinarily imply an ignorance of the law defense, whereas "willful" does); *United States v. Hancock*, 231 F.3d 557, 563 (9th Cir. 2000) (interpreting *United States v. Pasillas-Gaytan*, 192 F.3d 864, 866 (9th Cir. 1999) as a case where we did not read "knowing" as providing an ignorance of the law defense, even though the regulatory regime "arguably [was] highly technical").

Because the question is open, however, it can hardly be a "plain" or "obvious" error not to have permitted an ignorance of the law defense here.